823 F.2d 549
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sheila D. WILLIAMS, Defendant-Appellant.
 No. 86-5655
 United States Court of Appeals, Fourth Circuit.
 Submitted March 30, 1987.
Decided June 24, 1987.
 
 Fred Warren Bennett, Federal Public Defender, Stephen J. Cribari, Deputy Federal Public Defender, Terrence J. King, Third Year Law Student, on brief, for appellant.
 Henry E. Hudson, United States Attorney, William G. Otis, Assistant United States Attorney, on brief, for appellee.
 Before ERVIN, WILKINSON and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Sheila Williams appeals the district court's denial of her motion to suppress 151 grams of cocaine found in a search of her travel bag and purse at Washington National Airport. Williams pled guilty to possession of cocaine with intent to distribute, reserving the right to appeal the denial of her suppression motion. She claims that she was subjected to an investigative stop made without justification. She also urges that the investigatory stop evolved into an arrest without probable cause and that the cocaine she was carrying should be suppressed on these grounds. We affirm the district court's order denying the motion to suppress.
 
 
 2
 Williams arrived at Washington National Airport on an afternoon flight from Miami, Florida, on June 19, 1986. She was accompanied by a man carrying a small child, and she carried a purse and a canvas bag open at the top. Williams immediately made a phone call, after which she and her companion walked directly toward the terminal exit without picking up any baggage.
 
 
 3
 At this point, Agent Darren Wolpert of the Drug Enforcement Administration approached Williams, identified himself as a DEA agent and asked to speak to her. Williams agreed. When asked if she had just arrived on a flight, Williams answered no. Wolpert testified that he thought she might not have heard his question correctly. When he asked it again, Williams hesitated and said yes. Wolpert then asked to see her ticket. She showed him a one-way ticket made out to Jackie Brown, but when asked whether she had any other identification, Williams said no. In response to further questions, she said she had been in Miami about eight days, and that her luggage had arrived early and been picked up by her sister the day before.
 
 
 4
 Wolpert then explained that it was his job to interdict narcotics coming into Washington and asked her whether she was carrying any. Williams said she was not. When Wolpert asked for permission to look in her canvas bag, Williams refused.
 
 
 5
 Agent Rosel then joined Wolpert, who asked again for permission to look in the bag. Williams replied that she had to make a phone call. Wolpert indicated the phones located nearby; Williams walked over and made a call. Wolpert and Rosel followed, standing a few feet away while she called, out of earshot except for the word 'identification.'
 
 
 6
 When she had finished, Williams turned and faced the agents. Rosel asked whether he could look into the bag. Williams began taking things out of the bag and throwing them on the floor. Rosel said there was no need for that and asked again if he could look in the bag. Williams placed the bag on the floor and told him to go ahead. A plastic bag containing a white powder was found in the bag. The agents then asked Williams to go with them to the airport police station where Williams was placed in a holding cell area and the white powder was field tested and found to be cocaine. Williams was then advised of her Miranda rights. More cocaine was found in her purse. Williams told the agents that she sold cocaine because she was on welfare.
 
 
 7
 In ruling on her motion to suppress, the district court found that no investigatory stop or seizure had occurred, and that Williams had consented to the search of her canvas bag.
 
 
 8
 A district court's determination that a seizure has or has not occurred is essentially factual and will be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir. 1982). The district court here found that the encounter was simply a conversation in which Williams was asked to answer certain questions voluntarily, which she did. In United States v. Mendenhall, 446 U.S. 544, 553-54 (1980), the Supreme Court decided that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. In the absence of such force or a show of authority which would cause a reasonable person to believe that his freedom of movement had been curtailed, no seizure occurs. Therefore, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, or by putting questions to him. Florida v. Royer, 460 U.S. 491, 497 (1983). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. Id. A person approached in this way may legally disregard the questions put to him and walk away. Mendenhall, 446 U.S. at 554.
 
 
 9
 The inquiry in this case, as in Mendenhall and Royer, is whether the agents did or said anything, before their discovery of the cocaine, which would, objectively viewed, have caused Williams to believe she was not free to leave if she chose. We find that the agents did not engage in any of the conduct which the Supreme Court in Mendenhall identified as likely to give this impression and thus create a seizure. The agents did not behave in a threatening manner, did not display weapons or touch Williams without permission prior to the discovery of the cocaine, and did not ask her to leave the public area of the terminal or indicate in any way that she might be forced to comply with their request to speak with her and to look into her bag. They asked; she agreed. The fact that the agents asked more than once does not convert the encounter into a seizure; Williams clearly felt free to refuse the initial request. Nor does the fact that the agents were apparently standing between her and the terminal door when she made the phone call, without more, convert the encounter into a seizure. Williams' access to the door was not actually blocked or impeded. She was not asked to accompany the agents to another place or accused of transporting drugs until the cocaine was uncovered. She remained throughout the conversation near the door of the terminal in an open, public place. Williams suggests that the agents blocked her exit from the terminal. Their testimony was that the encounter took place in a wide hall leading to the exit, where people were coming and going throughout their conversation, and that she would have had no difficulty in leaving had she decided to do so.
 
 
 10
 Williams also suggests that a seizure occurred because a young black female was approached by a white male law enforcement official. However, the Mendenhall test is objective; it is whether a reasonable person would have felt free to leave. Mendenhall, 446 U.S. at 554-55; Royer, 460 U.S. at 502. With these facts, the district court did not err in finding that no seizure occurred.
 
 
 11
 Next, Williams maintains that she was effectively arrested when she made the phone call because the agents remained nearby. There is no legal basis for this contention. An arrest occurs when a person's freedom of movement is restrained and as a result he reasonably believes that he is not free to leave. In Florida v. Royer, 460 U.S. 491, 503 (1983), Royer was held to have been arrested when he was asked to leave the airport concourse and was taken to a small room forty feet away where he was alone with two officers who held his ticket and identification, told him they thought he was carrying narcotics and had seized the luggage he had already checked at the ticket counter. In contrast, Williams was in a public area of the airport, near an exit. She had given an equivocal answer to Agent Wolpert's request to look in her bag, responding only that she had to make a call. The agents remained, waiting for a more definite answer. Williams could have left without giving any answer. The fact that she stayed does not create a de facto arrest.
 
 
 12
 At the time the plastic bag of white powder was discovered, probable cause to believe that Williams was committing an offense did arise, and her arrest then was proper. Beck v. Ohio, 379 U.S. 89, 91 (1964).
 
 
 13
 For the foregoing reasons, we affirm the district court's order denying Williams' motion to suppress the evidence seized, and we affirm her conviction. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.
 
 
 14
 AFFIRMED.